DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, that terminated the parental rights of appellant Anna M. and granted permanent custody of appellant's three minor children to appellee Lucas County Children Services Board. For the reasons that follow, this court affirms the judgment of the trial court.
Appellant sets forth the following assignments of error:
"FIRST ASSIGNMENT OF ERROR
 "THE TRIAL COURT FAILED TO APPOINT COUNSEL FOR THE MINOR CHILDREN AS REQUIRED BY JUVENILE RULE 4(A).
"SECOND ASSIGNMENT OF ERROR
 "THE DECISION WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE SO THAT THE DECISION OF THE TRIAL COURT CONSTITUTED AN ABUSE OF DISCRETION."
The facts that are relevant to the issues raised on appeal are as follows. On September 23, 1999, the trial court ordered that minor warrants be issued for Brittany T., five years old; Christopher T., three years old; and Brandon T., twenty-one months old, upon the representations of appellee Lucas County Children Services ("LCCS") that the children were dependent, neglected or abused. On September 24, 1999, LCCS filed a complaint in dependency and neglect and a motion for a shelter care hearing. In the complaint, the agency alleged that the three children were dependent and neglected. The agency further alleged that: the family was living in a home without gas and the upstairs toilet was not working; the bank had foreclosed on the home; the home was filthy and there were cockroaches throughout; the floor was covered with "old food and other substances attractive to other undesirable fauna;" the small amount of furniture was boxed up and unusable; there was no edible food in the house; Brittany and Christopher had serious behavior problems; Christopher had killed a kitten, attempted to kill a puppy and chased his siblings with a knife; appellant mother was under investigation for welfare fraud and therefore was not receiving any benefits; there was serious domestic violence between the parents; father admitted to alcohol and marijuana abuse; father provided mother with thirty dollars each day for all of their household needs, and none of the children were receiving medical care.
Pursuant to an order filed September 24, 1999, LCCS was awarded temporary custody of the three children. At that time, the trial court appointed an attorney to represent the parents and a guardian ad litem for the children.
On October 14, 1999, LCCS filed the first of several case plans in this matter. The case plans included appellant's husband, the father of the three children, but since the father has not appealed the trial court's decision terminating his parental rights, the parts of the record pertaining to him are not discussed in this decision. The case plans called for appellant to complete a substance abuse assessment and follow any and all recommendations; to actively seek and provide safe, stable housing with working utilities and no safety hazards; to provide clean clothing and bedding and at least two nutritious meals per day for the children; to learn and utilize new skills to manage her anger and provide a non-violent environment for her children; to participate in counseling and domestic violence treatment if recommended; to complete a parenting class; to complete a diagnostic assessment by the family court; and to provide random urine screens.
An adjudicatory hearing was held on November 9, 1999, and the trial court found Brittany to be a dependent child; Brandon and Christopher were found to be neglected. Temporary custody was awarded to LCCS. Following a hearing held on September 19, 2000, the court granted the agency an extension of temporary custody.
On January 24, 2001, LCCS filed a motion for permanent custody of the three children. In its motion, the agency alleged that: 1) although appellant had acquired housing at one point, she lost it for non-payment of rent; 2) as of the date of the motion, appellant was living with a girlfriend who did not want appellant there on a permanent basis in a house that was not adequate for appellant, her children, and her friend; 3) appellant attended five anger management sessions between August 2000 and January 2001, although she had been scheduled for weekly sessions; 4) one of appellant's therapists stated that appellant failed to turn in all of her homework and did not want to be in the class; 5) appellant stated she has not gotten any benefit from her group counseling and her attendance was sporadic; 6) appellant continued to deny having anger management problems despite altercations with her roommate, her husband, and the daughter of the children's foster mother; and 7) despite having attended parenting classes, appellant was unable to control the children during visits.
The matter proceeded to a dispositional hearing on June 25 and 26, 2001. At the hearing, LCCS presented the testimony of several individuals who had contact with the family and who provided various services. Ann Evans, a clinical therapist with Harbor Behavioral Health Care, testified that appellant attended four sessions of her weekly domestic violence group in August and September 2000 before leaving to attend an anger management group. Evans recalled that appellant made it clear that she did not want to be in the group and was there only because LCCS told her she should be. Evans stated she did not believe appellant was motivated and said appellant's sporadic attendance was not satisfactory.
Joyce Ranson, a parent educator with LCCS, testified that she began working with appellant in April 2000. Ranson stated that appellant completed the twelve-week class but did not graduate from the program because she failed to do the written homework for four of the sessions. During her thirteen home visits with appellant, Ranson found that appellant was not able to implement the parenting skills learned during the classes, especially in the area of coping with stress. She stated that appellant had a problem controlling her temper and controlling her children, and that appellant did not make any progress with those issues while she attended Ranson's class. Ranson believed that the children were at risk of being hurt on the occasions when appellant would become involved in an argument with someone. She further testified that on the home visits appellant did very well with her children but had trouble with other adults on the scene. Ranson recalled that the children and appellant seemed to be very attached to one another and that appellant appeared to be compassionate and nurturing. Ranson described an incident where appellant gave another child's prescription medication for attention deficit disorder to her own son because appellant felt her son needed to be medicated, despite a doctor's assessment that he did not.
Michelle Sieja, a family visits manager with LCCS, testified that during the visits which she observed, appellant had difficulty controlling the children. Sieja said the quality of the visits was poor and that at nearly every visit there was a lot of yelling and screaming and fighting. Sieja testified that interaction was always poor, appellant continually yelled at the children to shut up and sit down, and the children cried. Sieja saw appellant become frustrated and would make suggestions for controlling the children but appellant would not apply the suggestions. She further testified that her notes on the last visit she observed on May 23, 2001, indicated that the visit was loud, the children screamed and threw tantrums, and appellant yelled back. Sieja observed that when the children moved to the outside play yard appellant sat and watched the children and did not interact with them. She further testified that appellant did not seem to be able to implement parenting techniques consistently and had to be reprompted by an agency staff member each time the need arose.
Tamara Mitchell, an LCCS caseworker, testified as to her involvement with appellant and the children. She stated that appellant's case plan called for parenting classes, domestic violence treatment and maintaining stable housing. Mitchell testified that the agency gave appellant a deposit to be used to acquire housing and that at one time appellant did have a suitable place to live. She stated that at the time of the hearing, however, appellant did not have stable housing and was staying with friends. Mitchell further testified that appellant had recently begun a domestic violence program. She stated that appellant had been involved in other domestic violence or anger management counseling but had been inconsistent in attending those services. Mitchell stated that appellant had not satisfactorily complied with this portion of her case plan. Mitchell further testified that she spoke to appellant about the need for her to consistently attend counseling if she wanted to be reunited with her children and gave appellant numbers to call to reschedule appointments. She stated that appellant never told her why she had not followed through with her anger management and domestic violence services. Mitchell had at times provided appellant with bus tokens to help with transportation to services when appellant asked. Mitchell also described incidents she witnessed wherein appellant lost her temper and engaged in heated arguments with other adults in the presence of her children and stated that she was concerned about appellant's inability to control her anger. She further stated that she did not think appellant was able at that time to control her five-year-old son and meet his needs as a child with attention deficit disorder. Mitchell testified that the children's foster mother wished to adopt all three children and that the adoption would be open, allowing the parents to continue to see their children. She further stated that, in light of appellant's inconsistency and failure to apply what she had been taught, appellant's recent initiatives were not sufficient to cause the agency to continue working toward reunification. She also testified that she has not noticed any change in appellant's ability to interact with her children in an appropriate fashion since appellant began receiving services.
Appellant presented the testimony of one of her parenting class teachers and the children's foster mother, and testified on her own behalf. Michelle Kermec, a psychoeducator at Harbor Behavioral Health Care, testified that appellant attended her parenting class and completed all assignments. She stated that the children do not attend the classes with the parents so she has no way of knowing whether appellant has been able to apply what she was taught to her own situation. Levy McKinney, the children's foster mother, testified that appellant has been consistent in her visitation with the children. She stated that she believed appellant could care for her children suitably if they were returned to her.
Appellant testified that she had obtained a divorce from the children's father in February 2001. She stated that she learned from her parenting classes how to listen to her children and understand them better and said she tried to apply those concepts when visiting with her children. She also testified that she was voluntarily taking another parenting class. She testified that she had located suitable housing at one point but LCCS took her Section 8 certification, leaving her with nowhere to go. Appellant testified that she was currently employed at Bambino's Pizza and that she had previously worked at two other restaurants. She said that one of her jobs conflicted with Evans' class but that she never explained that to Evans or Mitchell. She further testified that she has learned through anger management classes to control her anger. Appellant stated that she was currently living in a house with a girlfriend and that she could be asked to leave at any time. She added that it was not the type of stable housing that her case plan required.
The children's guardian ad litem recommended that permanent custody of the three children be awarded to LCCS so that the agency might pursue adoptive placement and planning. In her report filed with the trial court, the guardian concluded that the parents had failed to make significant progress in eliminating the problems that forced the removal of the children from the home, despite highly supportive efforts by service providers and foster parents. The guardian noted that the children's foster mother wished to adopt all three of the children and that the children were thriving in that home.
On July 24, 2001, the trial court filed its judgment entry in which it found that: 1) appellant had not completed her anger management program and continued to deny any anger management problems; 2) appellant had failed to secure stable, independent housing for herself and the children; 3) appellant is unable or unwilling to control her children's behavior; 4) appellant had not successfully completed any aspect of her case plan and had not remedied the conditions which required the removal of the children from the family home and had not demonstrated any significant progress toward reunification during the almost two years that the case had been pending before the court; 5) LCCS has made reasonable efforts to return the children to the parents' custody but such efforts were not successful due to the failure of the parents to successfully complete the necessary services; 6) an award of permanent custody to LCCS would be the children's best interest; 7) following the placement of the children outside the home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the children to be placed outside the home, the parents have failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside the home; and 8) the children cannot be placed with either parent within a reasonable time or should not be placed with either parent. The trial court granted the motion for permanent custody and it is from that judgment that appellant timely appeals.
In her first assignment of error, appellant asserts that the trial court erred to her prejudice when it failed to appoint an attorney to represent the children. In this case, the trial court appointed an attorney to act as the guardian ad litem for the children, but the attorney was not appointed to act as legal counsel. Appellant argues that Juv.R. 4(A) requires the trial court to appoint counsel for a child who is allegedly neglected or abused.
Juv.R. 4(A) provides:
 "(A) Assistance of counsel. Every party shall have the right to be represented by counsel and every child, parent, custodian, or other person in loco parentis the right to appointed counsel if indigent. These rights shall arise when a person becomes a party to a juvenile court proceeding. When the complaint alleges that a child is an abused child, the court must appoint an attorney to represent the interest of the child. This rule shall not be construed to provide for a right to appointed counsel in cases in which that right is not otherwise provided for by constitution or statute."
Appellant correctly notes that although the guardian ad litem in this case is also an attorney she could not also serve as the children's counsel without specific appointment by the trial court. In reDuncan/Walker Children (1996), 109 Ohio App.3d 841, 845. The record shows that there was no dual appointment, so the children were without counsel.
In support of her argument that the trial court should have appointed counsel for the children, appellant cites this court's decision in In reStacey S. (1999), 136 Ohio App.3d 503. In that case, which also involved the termination of parental rights, the trial court appointed a guardian ad litem for the children, who had been adjudicated neglected and dependent. The guardian was an attorney but was not appointed to act as the children's counsel. This court reversed the decision of the trial court terminating the appellants' parental rights, finding that the children, as parties to the action, were entitled to counsel pursuant to Juv.R. 4(A). In Stacey S., we rejected appellee's argument that Juv.R. 4(A) requires an attorney for the children only if there has been an adjudication of abuse, reasoning that, even if that were true, sexual and physical abuse were clearly at issue in the case. We found that not having counsel operated to the children's prejudice and concomitantly to the prejudice of the parents.
We note that in our decision in Stacey S., we found that there was arguably a conflict between the opinion of the guardian as to the children's best wishes and the children's own wishes as to their placement, which would require appointment of an attorney in addition to a guardian ad litem. In the case before us, there is no indication of a conflict between the wishes of the children and the decision of the guardian as to what is in the children's best interest. The children in this case were seven, five and three at the time of the hearing. Even if separate counsel had been appointed to represent their wishes, it would have been difficult if not impossible to ascertain their desires as to placement, particularly as to the five-year-old and three-year-old.
As to the question of Juv.R. 4(A), we find appellant's argument without merit. We choose not to question our finding in Stacey S. that the children and parents in that case were prejudiced by the trial court's failure to appoint separate counsel for the children. We do, however, wish to address the issue of Juv.R. 4(A) as it pertains to legal representation of children in juvenile court proceedings. We do not dispute that, pursuant to Juv.R. 2(Z), the term "party" includes children who are the subject of juvenile court proceedings and that, therefore, the children in this case were parties to the proceeding. Juv.R. 4(A) states that every party "shall have the right to be represented by counsel * * *." It does not state that the trial court must appoint an attorney for every party. If an indigent party requests an attorney, the trial court is of course required to appoint one. There is no evidence in the record of this case that a request was made for counsel to represent the children. Pursuant to Juv.R. 4(A), the only time the trial court is required to appoint an attorney to represent a child is when the complaint alleges abuse. There was no allegation of abuse in this case and, therefore, the trial court was not required by Juv.R. 4(A) to appoint an attorney to represent the children. Accordingly, appellant's first assignment of error is not well-taken.
In her second assignment of error, appellant asserts that the trial court's decision was not supported by clear and convincing evidence. Appellant argues that appellee did not introduce into evidence any exhibits relating to the facts as adjudicated to support its allegations that appellant had failed to remedy the circumstances that caused the removal of the children. We note, however, that the trial court had before it evidence consisting of the parents' case plans and the testimony of several individuals as summarized above, from which it could make an informed decision as to whether the parents had remedied the conditions that had led to the removal of the children from the home. This argument is without merit.
R.C. 2151.353 provides as follows:
 "(A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
"* * *
 "(4) Commit the child to the permanent custody of a public children services agency or private child placing agency, if the court determines in accordance with division (E) of section 2151.414 * * * of the Revised Code that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of section 2151.414 * * * of the Revised Code that the permanent commitment is in the best interest of the child. * * *"
R.C. 2151.414(E) provides that:
 "* * * If the court determines, by clear and convincing evidence, at a hearing held * * * for the purposes of division (A)(4) of section 2151.353 * * * of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent: * * *."
"* * *
 "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be place outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties."
"* * *
"(12) Any other factor the court considers relevant."
Clear and convincing evidence is that evidence that will create in the mind of the trier of fact a firm conviction as to the allegations sought to be proved. Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. It is our duty to review the record to determine whether there was sufficient evidence before the trial court to meet the clear and convincing standard. State v. Schiebel (1990), 55 Ohio St.3d 71,74.
Based upon the evidence as summarized above, this court finds that LCCS presented sufficient evidence to create in the mind of the trial court a firm conviction that Brittany, Christopher, and Brandon T. could not be placed with either parent within a reasonable time or should not be placed with them, and that it was in the children's best interest to grant permanent custody to Lucas County Children Services Board. The trial court had before it extensive testimony that appellant had failed over a period of nearly two years to follow through with the programs and services offered by the agency since the inception of this case. Appellant also failed to obtain suitable housing for herself and her children. Accordingly, appellant's second assignment of error is not well-taken.
On consideration whereof, this court finds that substantial justice was done the party complaining, and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Costs of this appeal are assessed to appellant.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Richard W. Knepper, J., Mark L. Pietrykowski, P.J., JUDGES CONCUR.